IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 09-233-SLR ) |
| THE BANCORP BANK, | ) ) |
| Defendant. | ) ) |

Paul Cottrell, Esquire of Tighe & Cottrell, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Neil L. Henrichsen, Esquire and Helen H. Albee, Esquire of Henrichsen Siegel, P.L.L.C., Jacksonville, Florida.

Jeffrey S. Cianciulli, Esquire and Susan Verbonitz, Esquire of Weir & Partners LLP, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: October 30, 2009
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Travelers Casualty and Surety Company of America ("plaintiff") brought this common law negligence action against defendant Bancorp Bank ("defendant") on April 7, 2009. (D.I. 1) Plaintiff is the fidelity insurer of The Benefit Consultants Group, Inc. ("Benefit"). (*Id.* at 2) Plaintiff claims that defendant breached its duty of care owed to Benefit by accepting unauthorized checks drawn on Benefit's account at First Trust Savings Bank ("First Trust") and depositing the funds into the account of Robyne Sautner ("Sautner"), a former employee of Benefit holding an account with defendant. (*Id.* at 8) Presently before the court is defendant's motion to dismiss for failure to state a claim upon which relief may be granted. This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds $75,000 and diversity of citizenship exists between plaintiff and defendant. In addition, venue in this court is appropriate because defendant is headquartered in Wilmington, Delaware. For the reasons set forth below, the court grants defendant's motion to dismiss.

## II. BACKGROUND

Defendant is an internet-based bank, chartered under the laws of the State of Delaware, which creates customized banking programs for corporations. (D.I. 1 at ¶¶ 2, 6) Benefit designs and services retirement plans. (*Id.* at ¶ 5) Defendant created a customized banking program for Benefit so that Benefit's clients and employees could use defendant's banking services. (*Id.* at ¶ 6) While providing banking services under Benefit's banking program, defendant used its trade name, BCG Banking Services. (*Id.* at ¶¶ 6, 34)

On December 9, 2005, Sautner opened a savings account with defendant. (*Id.* at ¶ 9) Beginning sometime in April of 2006, Sautner began an embezzlement scheme whereby she fraudulently requested retirement disbursements on behalf of Benefit employees, causing Benefit to issue checks drawn on its First Trust banking account. (*Id.* at ¶ 11) All checks, but one, were made payable to BCG Banking Services; the remaining check was made payable to "Bankcorp Bank." (*Id.* at ¶ 13) Every check made payable to BCG Banking Services noted that it was written "for the benefit of" ("FBO") a Benefit employee other than Sautner, but the FBO designation was not properly included in the payee line. (*Id.* at ¶ 12) Throughout this time, Benefit had no accounts with defendant and did not owe defendant any debts. (*Id.* at ¶¶ 31, 32) After Sautner obtained possession of the checks (hereinafter, "disputed checks"), she indorsed them with her account number along with the words "for deposit to account . . ." (*Id.* at ¶ 14) In total, defendant deposited 30 checks into Sautner's savings account amounting to $172,816 in losses to Benefit. (*Id.* at ¶ 13, 15)

In December of 2006, Benefit discovered Sautner's fraudulent disbursements and terminated her employment. (*Id.* at ¶ 22) After an investigation and execution of a release and assignment agreement, plaintiff paid Benefit for its losses, and Benefit assigned all rights and claims to plaintiff against any person or organization responsible for its losses. (*Id.* at ¶ 27) Plaintiff brings this action against defendant, alleging that the losses were the direct and proximate result of defendant's negligence in failing to verify that Sautner had the authority to receive payment on the disputed checks.

## III. STANDARD OF REVIEW

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not factual allegations which the court must accept as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); *accord Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [.]") (internal quotations and citation omitted).

To survive a motion to dismiss, a complaint must contain sufficient facts to "state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570.

> [S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.

*Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 555) (internal quotations omitted). Determining whether a complaint states a facially plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 129 S.Ct. at 1950

(citation omitted).

Courts may employ a two-pronged approach in evaluating the sufficiency of a complaint.

> [A] court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

*Id.* at 1950. In sum, Rule 8(a)(2) of the Federal Rules of Civil Procedure does not require "detailed factual allegations," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

## IV. DISCUSSION[1]

### A. Displacement by the Uniform Commercial Code

The court will first address whether plaintiff's common law negligence claim is displaced by Articles 3 and 4 of the Delaware Uniform Commercial Code ("UCC").[2] The UCC provides a comprehensive framework for allocating losses arising from the handling of bank checks. *See* 6 Del. C. § 3-101 *et seq.*; 6 Del. C. § 4-101 *et seq.* However, common law claims may supplement the UCC "[u]nless displaced by the particular provisions of the Uniform Commercial Code." 6 Del. C. § 1-103(b). Thus, the court must determine whether a particular provision of the UCC displaces plaintiff's

---

[1]Contrary to defendant's assertion, plaintiff does not bring a conversion action against defendant. (D.I. 10 at 7; D.I. 13 at 13) Such an action would be displaced by 6 Del. C. § 3-420.

[2]The parties agree that Delaware law governs the displacement issue. *See* (D.I. 10 at 4; D.I. 13 at 10)

4

common law negligence claim.

### 1. Sections 3-404, 3-405, and 3-406

Defendant argues that plaintiff's common law negligence claim is displaced by sections 3-404, 3-405, and 3-406 of the UCC.[3] (D.I. 14 at 7) Sections 3-404 and 3-405 provide circumstances under which the drawer of a check generally bears the loss arising from the handling of bank checks. 6 Del. C. §§ 3-404 (entitled "Imposters; fictitious payees"), 3-405 (entitled "Employer's responsibility for fraudulent indorsement by employee"). Sections 3-404 and 3-405 also contain comparative negligence provisions which allocate the liability between the drawer of the check (here, Benefit) and a depository bank (here, defendant) when the bank's failure to exercise ordinary care in handling the check substantially contributes to the drawer's loss. 6 Del. C. §§ 3-404(d), 3-405(b). However, sections 3-404 and 3-405 are only applicable when either the fraudulent indorsement is made in a name that is substantially similar to the payee's name or the check is deposited into an account with a name that is substantially similar to the payee's name. 6 Del. C. §§ 3-404(c), 3-405(c).

Plaintiff argues that it would not have a cause of action under § 3-404 of the UCC because Sautner neither indorsed the disputed checks in a name substantially similar to the payee's name nor deposited the checks into an account with a name that

---

[3] Contrary to defendant's assertion, § 3-406 could not provide plaintiff with a cause of action because it speaks only of preclusion. 6 Del. C. § 3-406(a) ("A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is *precluded* from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection") (emphasis added).

is substantially similar to the payee's name.[4] (D.I. 13 at 18) The court agrees. The disputed checks were made payable to either defendant or BCG Banking Services, defendant's trade name. (D.I. 1 at ¶¶ 13, 34) However, Sautner did not indorse the disputed checks in defendant's name or deposit the disputed checks into an account bearing defendant's name. (*Id.* at ¶¶ 14, 15) Sautner indorsed the disputed checks with her account number along with the words "for deposit to account . . ." (*Id.* at ¶ 14) Sautner then deposited the checks into her own bank account. (*Id.* at ¶ 15) Therefore, sections 3-304 and 3-305 of the UCC do not displace plaintiff's common law negligence claim, because these sections do not provide plaintiff with a cause of action under the facts as alleged.

### 2. § 4-401

Defendant also argues that plaintiff's negligence claim is displaced by § 4-401 of the UCC. (D.I. 14 at 7) Section 4-401 provides a bank customer with a cause of action against its own bank whenever the customer's account is charged with an amount that is not properly payable. 6 Del. C. § 4-401(a). The UCC's official comment further explains that "[a]n item containing a forged drawer's signature or forged indorsement is not properly payable." *Id.*, cmt. 1. If the customer's bank (here, First Trust) has to re-credit its customer's account for an amount that was not properly payable, then the bank can attempt to get reimbursed for the amount from the depository bank (here, defendant) for breaching its presentment warranty. *See* 6 Del. C. §§ 3-417, 4-207.

---

[4]Although not addressed in plaintiff's brief, as mentioned above, plaintiff would also be precluded from claiming a cause of action under § 3-405 for the same reasons as those under § 3-404.

Plaintiff argues that it is precluded from bringing a cause of action against Benefit's own bank (First Trust) under § 4-401 because the amount charged to its account was properly payable. (D.I. 13 at 17) Plaintiff asserts that the facts in the case at bar are similar to those in a decision from the Maryland Court of Special Appeals, which held that a title company could not bring a cause of action against its bank under UCC § 4-401(a).[5] *Farmers Bank of Md. v. Chi. Title Ins. Co.*, 877 A.2d 1145, 1150 (Md. Ct. Spec. App. 2005), *aff'd sub nom. Chicago Title Ins. Co. v. Allfirst Bank*, 905 A.2d 366 (Md. 2006). In *Farmers*, after a real estate closing, a title company issued two checks to the borrower (the first check was payable to the borrower and the second check was payable to the depository bank). *Id.* at 1149. The borrower disregarded the title company's instructions to give the second check to the depository bank and, instead, deposited the check in the borrower's personal account at the depository bank. *Id.* The borrower indorsed the second check in his own name, and the depository bank then put its stamp on the check before sending it to the title company's bank for payment. *Id.* The court held that the title company could not sue its bank under UCC § 4-401(a), because the check presented to the title company's bank was properly payable. *Id.* at 1164. The court disregarded the borrower's writing on the check because it was an "anomalous indorsement," meaning an indorsement by a person who is not a holder of the instrument. *Id.* (explaining that an "[a]nomalous indorsement does not affect the manner in which the instrument may be negotiated.") (citing UCC § 3-205(d)).[6] Since the check was made payable to the depository bank, the depository

---

[5] The corresponding Delaware statute is 6 Del. C. § 4-401(a).
[6] The corresponding Delaware statute is 6 Del. C. § 3-205(d).

7

bank was the holder of the check. *Id.* Thus, the check became properly payable when the depository bank stamped its indorsement on the back of the check. *Id.*

The court agrees that, under the particular facts and circumstances of the case at bar, plaintiff is precluded from bringing a cause of action under § 4-401(a) of the UCC. Although the holding in *Farmers* is not binding on the court, its facts and analysis of the UCC are analogous to this case. Like the title company in the *Farmers* decision, plaintiff at bar cannot sue Benefit's bank (First Trust) under 6 Del. C. § 4-401(a). Since the disputed checks were made payable to defendant or BCG Banking Services, Sautner was never a holder of the disputed checks.[7] (D.I. 1 at ¶ 13) If Sautner was never a holder, Sautner's writing on the checks was an anomalous indorsement that must be disregarded.[8] *See* 6 Del. C. § 3-205(d). When defendant put its stamp of indorsement on the back of the disputed checks, the checks became properly payable because defendant was named as the checks' payee. (D.I. 1 at ¶ 13) Since the disputed checks were properly payable, plaintiff cannot bring a cause of action against Benefit's bank (First Trust) under § 4-401(a) of the UCC.

Therefore, the court holds that plaintiff's common law negligence action is not displaced by the UCC, because the UCC does not provide plaintiff with a cause of action under the particular facts of the case at bar.

---

[7] Sautner was not a holder of the disputed checks because they were not payable to either Sautner or to bearer. 6 Del. C. § 1-201(21)(a) (to be a holder, the check must be payable either to the person in possession of the check or to bearer).

[8] In its reply brief, defendant offered no analysis as to whether Sautner's writing should be disregarded as an anomalous indorsement and merely restated the general rule that a customer has a cause of action against its own bank for charging an amount not properly payable. (D.I. 14 at 7)

**B. Duty of Care**

The court will next address whether a depository bank owes a duty of care to a non-customer drawer of a check. It is undisputed that Delaware law is controlling in this case. Defendant relies on Delaware case law with respect to the duty of care issue. (D.I. 10 at 7) (citing *Outdoor Technologies, Inc. v. Allfirst Financial, Inc.*, 2001 WL 541472 (Del. Super. 2001)). Plaintiff also relies on Delaware case law in its duty of care argument. (D.I. 13 at 5) (citing *Kuczynski v. McLaughlin*, 835 A.2d 150 (Del. 2003)). Thus, the court must decide whether Delaware law imposes a duty of care on a depository bank for non-customer drawers of a check.

Plaintiff argues that Delaware courts would adopt a rule from the Maryland Court of Special Appeals, which states that, when a check is payable to the order of a bank to which the drawer is not indebted (here, defendant), a duty of inquiry is imposed upon the bank accepting the deposit to make sure that the drawer (here, Benefit) intended the bank to receive the drawer's money. (D.I. 13 at 6) (citing *Bank of Southern Maryland v. Robertson's Crab House, Inc.*, 389 A.2d 388, 393 (Md. Ct. Spec. App. 1978) (citing 9 C.J.S. Banks and Banking § 340 at 683)). Plaintiff claims that this rule should be applied because, when a check is made payable to a bank from a drawer who owes it no debt, there is a foreseeable risk that the check was found, stolen, or forged and the depositor bank is in the best position to avoid the loss by inquiring into the validity of the transaction with the drawer. *See Travelers Casualty and Surety Co. of America v. Wells Fargo Bank, N.A.*, 374 F.3d 521, 526 (7th Cir. 2004).

Although the court is sympathetic to plaintiff's argument, there are no facts

9

indicating that Delaware courts would adopt Maryland's common law negligence rule. Neither party has cited any Delaware case law holding that a depository bank owes a duty of care to a non-customer drawer of a check. See (D.I. 14 at 2, n. 2) The court, in its independent research, has not found any controlling Delaware law. The court is not persuaded that Delaware courts would now adopt the holding in *Robertson's Crab House*, which was decided over thirty years ago in 1978. Since Delaware does not recognize plaintiff's common law negligence claim, the court concludes that plaintiff's complaint must be dismissed for failure to state a claim upon which relief may be granted.

## V. CONCLUSION

For the reasons stated above, defendant's motion to dismiss (D.I. 9) is granted. An appropriate order shall issue.